# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 11 C 50348 | DATE | 3/27/2013 |
| CASE TITLE | Hoddenback vs. Chandler, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendants' motion for summary judgment and their motion to deem facts admitted are denied. It is further ordered that counsel for the parties appear before Magistrate Judge Mahoney within 30 days to schedule a settlement conference.

*Philip G. Reinhard*

■[ For further details see text below.]

Notices mailed by Judicial staff.
Copy to Magistrate Judge Mahoney.

## STATEMENT - OPINION

    Plaintiff, Keith Hoddenback, a state prisoner housed at Dixon Correctional Center, brings this action under 42 U.S.C. § 1983 against defendants, Nedra Chandler, Christ Barnhart, Brian Fairchild, Dr. Imhotep Carter, Robin Schrecengost, Amber Allen, Dr. Rohit Agrawal, and Dr. Arthur Funk, alleging defendants' deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment. Four of the defendants, Carter, Schrecengost, Agrawal and Funk, move for summary judgment [34].[1] Defendants argue plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), prior to bringing this action and, therefore, they are entitled to summary judgment. Defendants also move to deem facts from their LR56.1(a) statement of facts admitted [49].

    LR56.1(a)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law." The statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."

    LR56.1(b)(3) requires a party opposing summary judgment to file "a concise response to the movant's statement" containing "(A) a response to each numbered paragraph in the moving party's statement, including in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The opposing party may also file a statement of additional facts that require denial of summary judgment "including references to the affidavits, parts of the record, and other supporting materials relied upon." LR56.1(b)(3)(B).

    The purpose of LR56.1 "is to make the summary judgment process less burdensome on district courts by requiring the parties to nail down the relevant facts and the way they propose to support them." Sojka v. Bovis Lend Lease, Inc., 686 F.3d 394, 398 (7th Cir. 2012). The court has discretion to require strict compliance with this rule. Cracco v. Vitran Express, Inc., 559 F.3d 625, 632 (7th Cir. 2009). Plaintiff elected not to file a LR56.1(b)(3)(B) statement of additional facts and many of his responses to the facts set forth in

defendants' statement do not conform to the requirements of LR56.1(b)(3)(A) in that they do not cite to any evidence or are unclear (i. e., plaintiff's response to defendants' statement of fact paragraph 18: "Plaintiff does not dispute this statement. Disputed to the extent the statement is incomplete and is not an exhaustive characterization of all relevant procedures."). Plaintiff includes in his responses additional facts (i. e., an alternative chronology of events in the grievance process in his response to defendants' statement of facts paragraph 33). By doing so, rather than filing a statement of additional facts, plaintiff circumvented LR56.1's procedure for setting out additional facts that require denial of summary judgment and efficiently allowing the movant to dispute the non-movant's additional facts. The approach taken by plaintiff has not made "the summary judgment process less burdensome" on the court. Sojka, 686 F.3d at 398. However, the court will not deem all defendants' facts admitted but instead will disregard plaintiff's improper responses. The court will still assure itself that the facts presented in defendants' statement are supported by evidence and that the evidence is sufficient to support summary judgment.

The PLRA "provides that no action shall be brought under § 1983 with respect to prison conditions until all applicable administrative remedies are exhausted. Dole v. Chandler, 438 F. 3d 804, 808 (7th Cir. 2006), citing 42 U.S.C. § 1997e(a). The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. Dole, 438 F. 3d at 809." Powers v. Chandler, No. 10 C 50097, 2011 WL 2473709, * 1 (N.D. Ill. June 22, 2011) (Reinhard, J.)

Plaintiff raises two claims for medical deliberate indifference. Plaintiff experienced pain and a bloody discharge from his penis was treated with antibiotics and shortly thereafter experienced pain in his eye. He complains about the delay in being seen by an eye specialist for what was ultimately determined to be a detached retina. His second claim is for not getting a permanent low bunk permit and being improperly charged a $2 co-pay for a doctor visit for purposes of getting a low bunk permit renewed. He filed grievances as to each of these claims.

As to the first claim, plaintiff and defendants have different views of the chronology of events concerning the grievance filed for that claim. Plaintiff says there were two versions of the grievance, an original and a handwritten copy, submitted by plaintiff. The original he says was filed as an emergency grievance with the Chief Administrative Officer ("CAO") on March 16, 2010. On April 7, 2010, the CAO denied emergency review of the original grievance. On April 12, 2010, plaintiff submitted the original grievance to Counselor Messina who responded to it on June 29, 2010. On July 8, 2010, plaintiff submitted the original grievance to the Grievance Officer who recommended denial. The CAO concurred on July 16, 2010 and plaintiff submitted the original grievance to the ARB on August 2, 2010. The ARB recommended denial on November 12, 2010 and the Acting Director of the Illinois Department of Corrections approved this recommendation on November 18, 2010.

Plaintiff also claims to have mailed a handwritten copy of this emergency grievance directly to the Administrative Review Board ("ARB"), which marked it received on April 5, 2010, and on April 14, 2010 returned it to him stating responses by the Grievance Officer and CAO were required. According to plaintiff this is all of the action taken on the copy.

The difficulty with plaintiff's account is that he does not submit any evidence to support it. He simply refers to certain documents attached as exhibits to the affidavit of Sherry Benton, an employee of the Department of Corrections, which was filed in support of defendants' motion. Benton gives a sworn account of the chronology of events based on her review of the ARB records. Her account differs from the unsworn account offered by plaintiff.

According to Benton's affidavit, on or about April 5, 2010, the ARB received a grievance dated March 16, 2010 ("April 5th Document") from plaintiff in which he sought a visit with an eye specialist and pain medication. The ARB could not consider this grievance because plaintiff failed to show he submitted it at the institutional level. The ARB returned the grievance to plaintiff on April 14, 2010. On or about August 2, 2010, the ARB received the same grievance from plaintiff. This time the grievance indicated that on April

7, 2010, the CAO deemed his grievance not to be an emergency and instructed him to submit it through normal procedural channels. The Grievance Officer's Report indicates the grievance was not submitted to him until July 8, 2010, which was more than 60 days after the treatment complained of in the March 16, 2010 grievance, making it untimely. Plaintiff submitted a typed addendum to this grievance but it could not be considered because he did not show it had been submitted at the institutional level for an initial review. On November 12, 2010, the ARB concluded the issue raised by the grievance was appropriately addressed at the institutional level noting plaintiff had eye surgery on September 15, 2010, that he had been sent for evaluation of his eye condition five times between June 17, 2010 and October 28, 2010 and that the condition was determined to be due to a retinal detachment sustained at age ten.

Failure to exhaust administrative remedies is an affirmative defense with the burden of proof on defendants. Maddox v. Love, 655 F.3d 709, 720 (7th Cir. 2011). Plaintiff was required to follow the Illinois Department of Corrections grievance procedures to properly exhaust his claims. Those procedures required him to first attempt to resolve the issues with his counselor. 20 Ill. Admin. Code § 504.810(a). If he was unable to resolve the complaint a written grievance needed to be filed within 60 days after the occurrence. Id. The procedures provide the grievance form "shall be addressed to the Grievance Officer." Id. at 504.810(b). The procedures also provide that a grievance may be handled on an emergency basis by forwarding the grievance directly to the CAO. Id. at 504.840.

Benton's affidavit says the ARB received the same grievance on August 2, 2010 ("August 2nd Document") that it received on April 5, 2010 but that the August 2nd Document indicated that on April 7, 2010 the CAO deemed the grievance not to be an emergency and instructed plaintiff to submit it in the normal manner. While the grievance may have been about the same issue, it clearly is a different document. The August 2nd Document bears the CAO's April 7, 2010 determination that the grievance was not an emergency. It also shows that Counselor Messina received this document on April 12, 2010 and notes Messina's response to plaintiff which was dated June 29, 2010. The Grievance Officer's Report indicates it was received July 8, 2010 and recommended denied July 9, 2010 and that the CAO received the recommendation on July 16, 2010 and concurred in the denial the same day.

The April 5th Document and the August 2nd Document, both included as exhibits to Benton's affidavit, appear inconsistent. Benton's affidavit is based on her review of the ARB's records not personal knowledge of what went on in the grievance procedure at the institution. Her conclusion as to the procedure followed at the institution based on her review of the August 2nd Document appears on the record to be speculative. It is not a sufficient basis to conclude as a matter of law that plaintiff did not exhaust his administrative remedies. The August 2nd Document on its face appears to indicate otherwise.[2]

Additionally, the ARB's ultimate decision of the grievance, based on the August 2nd document, does not discuss failure to exhaust. While the ARB returned the April 5th Document to plaintiff for failure to present it at the institution, the August 2nd Document does not appear ever to have been questioned for timeliness or failure to exhaust. Since the prison administrators did not rely on failure to follow time deadlines, any such failure is not a basis for finding a failure to exhaust. Maddox, 655 F.3d at 722.

Defendants argue plaintiff failed to exhaust his administrative remedies as to his claim related to having to pay a co-pay for an examination in order to obtain a low bunk permit. Defendants note that the complaint also claims denial of a low bunk permit but that the grievance only addressed the co-pay issue and not the denial of a low bunk permit. Defendants also contend that exhaustion has not occurred as to defendant Funk because the complaint alleges Funk did not examine plaintiff until after plaintiff had filed the grievance.

On September 27, 2011, plaintiff filed a grievance in which he requested to have the $2 co-pay he was charged when he sought to have his low bunk permit renewed and to be put on a chronic illness list and given a permanent low bunk permit because the blindness in his eye will not change. A year earlier, in a decision dated June 28, 2010, the ARB had recommended and the Director of the Department of Corrections had

**STATEMENT - OPINION**

concurred that plaintiff should be scheduled for a chronic illness clinic for his eye condition every six months and that no medical co-pay should be charged to plaintiff for this chronic illness clinic. When he was charged the $2 co-pay when he was examined for his low bunk permit renewal on September 27, 2011, plaintiff filed a grievance based on the June 28, 2010 decision of the ARB and Director.

The counselor received this grievance on October 21, 2011 and the same day responded that plaintiff "was discontinued from Gen. Med. Clinic 6/29/09." The response continued "[h]is low bunk issue is not a chronic clinic issue. Dr. Funk saw him 10-15-11 & said he didn't qualify for low bunk." The Grievance Officer's Report indicates it was received on October 21, 2011 and reviewed on November 3, 2011 and recommended the grievance be denied. The report noted Dr. Funk saw plaintiff on October 5, 2011 and said he did not qualify. The COA concurred on November 22, 2011. On May 18, 2012, the ARB recommended and the Director concurred that the grievance should be denied.

Defendants argue the grievance does not address the request for a low bunk permit but it clearly asks that plaintiff "be put on chronic illness list as stated by medical director. And given a permanent low bunk permit because blindness in eye will not change." Defendants also argue the grievance does not cover the actions of Dr. Funk because the grievance was filed before Dr. Funk examined plaintiff. Therefore, defendants maintain plaintiff failed to exhaust his administrative remedies as to Dr. Funk. They state "[t]hat a counselor or grievance officer referred to Dr. Funk in response to Plaintiff's grievance (in the context of what occurred after the grievance was filed) is entirely immaterial. One cannot grieve about something that had not happened yet." However, defendants do not explain why Dr. Funk's action was immaterial. Why did Dr. Funk examine him if not for the purpose of resolving his grievance? Defendants do not offer any authority, only their opinion, to support their claim plaintiff was required to file a new grievance after Dr. Funk saw plaintiff. This is insufficient to support summary judgment for failure to exhaust administrative remedies as to Dr. Funk.

For the foregoing reasons, defendants' motion for summary judgment and their motion to deem facts admitted are denied. It is further ordered that counsel for the parties appear before Magistrate Judge Mahoney within 30 days to schedule a settlement conference

---

1. Hereinafter "defendants" shall mean Carter, Schrecengost, Agrawal and Funk only.

2. Defendants suggest that submitting the grievance to the counselor did not relieve plaintiff of his obligation to submit the grievance to the Grievance Officer within 60 days of the incident even though the counselor failed to respond to plaintiff within that 60 day period. Defendants state "resolving a grievance with a counselor is not mandatory under the procedure" citing to Section 504.810(a). No other authority is cited. In the absence of any citation of case authority supporting this position the court will not adopt it. The Offender's Grievance form supplied for use by the Department of Corrections directs grievances such as this one to be sent to the counselor. Only if the issue is not resolved by the counselor is it to be sent to the grievance officer.